**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| JUDY SOTO, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No. SA-25-CV-01645-XR |
| | § | |
| DANNY HERMAN TRUCKING, INC., | § | |
| SHAWN TIMOTHY WALDMANN, | § | |
| *Defendants* | § | |

**ORDER GRANTING PARTIAL MOTION TO DISMISS**

On this date, the Court considered Defendant Danny Herman Trucking, Inc.'s Motion to Dismiss in Part (ECF No. 24) and the associated briefing (ECF Nos. 27–28). After careful consideration, the Motion is **GRANTED**. Plaintiff's direct negligence claims against Danny Herman (including her negligent entrustment claim), her gross negligence claims, and her intoxication assault claims are **DISMISSED WITHOUT PREJUDICE**. Her negligence and negligence per se claims against Shawn Timothy Waldmann and her vicarious liability claim against Danny Herman Trucking, Inc. remain pending.

**BACKGROUND**[1]

On the afternoon of July 1, 2024, Plaintiff Judy Soto was traveling westbound in the left-hand lane of Interstate 10 in Kendall County, Texas. ECF No. 23 at 2. A Danny Herman Trucking, Inc. tractor-trailer, operated by Shawn Timothy Waldmann, merged onto the highway.[2]

[1] These facts are derived from the First Amended Complaint (ECF No. 23), taking "all well-pleaded facts as true and view[ing] those facts in the light most favorable to the plaintiff[]." *See Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021).

[2] Danny Herman admits that Waldmann was "an operator of one of [its] commercial vehicles at the time frame of the" incident underlying this suit and that he "was operating within the course and scope of his employment at the time." ECF No. 24 at 2. But Danny Herman denies that Waldmann was involved "in any motor vehicle accident at the time." *Id.*

ECF No. 23 at 2. Without warning, the tractor-trailer veered into Soto's lane and collided with her vehicle. ECF No. 23 at 3. The impact forced Soto's vehicle off the highway and into the median. *Id.* The tractor-trailer did not stop after the collision. *Id.* As a result of the accident, Soto sustained personal injuries and property damage. *Id.*

After the collision, Danny Herman did not require Waldmann to submit to drug and alcohol testing. ECF No. 23 at 16. And the company has been unable to provide dash cam footage from the accident. ECF No. 23 at 15. Its Director of Safety stated in an internal email dated July 19, 2024, that "no events registered from our dash cam system during this time" and that the system "lacked the capability to 'roll back to [July 1, 2024],'" indicating that the footage was no longer available. ECF No. 23 at 9.

Soto alleges that Danny Herman and Waldmann have had documented safety and regulatory issues. ECF No. 23 at 4, 7. From May 2023 through March 2026, Danny Herman's Unsafe Driving BASIC measure was continuously over 1.0, which is above the national average for peer carriers.[3] ECF No. 23 at 5–6. A company's BASIC measure is based in part on the amount and type of unsafe driving violations their drivers incur. *Safety Measurement System (SMS) Methodology: Behavior Analysis Safety Improvement Category (BASIC) Prioritization Status*, Federal Motor Carrier Safety Administration (June 2026), https://csa.fmcsa.dot.gov/Documents/SMSMethodology.pdf (last visited August 27, 2026). Among the violations contributing to Danny Herman's score

[3] "The Unsafe Driving Behavior Analysis and Safety Improvement Category (BASIC) is one of seven categories that the Federal Motor Carrier Safety Administration (FMCSA) uses to determine how a motor carrier ranks relative to other carriers with a similar number of safety events." *Unsafe Driving BASIC Factsheet*, Federal Motor Carrier Safety Administration (Dec. 2012), https://csa.fmcsa.dot.gov/documents/fmc_csa_12_008_basics_unsafedriving.pdf (last visited August 27, 2026). It is meant to measure the dangerous or careless operation of commercial motor vehicles (CMVs). *Id.* A score of zero reflects the best performance. *Safety Measurement System*, Federal Motor Carrier Safety Administration, https://ai.fmcsa.dot.gov/SMS/Carrier/50467/BASIC/UnsafeDriving.aspx (last visited August 27, 2026).

were several speeding violations, one violation for texting while driving, and two violations for the use of a hand-held mobile telephone. ECF No. 23 at 4.

Before the collision, Danny Herman was aware of potentially concerning information about Waldmann's driving history and medical condition. ECF No. 23 at 7. In his employment application, Waldmann disclosed: a prior speeding violation for driving eleven miles per hour above the posted speed limit; a fatal crash that he was not cited for and maintained was not his fault; and multiple vehicle violations while working for previous employers, including inoperative/defective brakes, power steering violations, and axle positioning parts being defective or missing. ECF No. 23 at 7–8. Nineteen days before the accident, Waldmann disclosed in a Department of Transportation ("DOT") medical examination that he had a condition requiring the use of a Continuous Positive Airway Pressure ("CPAP") machine, indicating a sleep apnea diagnosis. ECF No. 23 at 9. And one week before the accident, he drove 524 miles in a day, totaling eight hours and twenty-four minutes of drive time. ECF No. 23 at 9.

Danny Herman has not produced documentation that it monitored Waldmann's CPAP compliance following his sleep apnea disclosure. ECF No. 23 at 10. Nor has it produced any training materials, safety bulletins, or supervisory protocols for drivers with sleep disorders. ECF No. 23 at 19. It has not produced records showing that it provided recurring safety training to its drivers. ECF No. 23 at 18. And it has failed to produce documentation that it conducted annual driving-record reviews of Waldmann or provided supervisory intervention for Waldmann over his ten years of employment. ECF No. 23 at 16, 21. It only produced documentation of an initial review of Waldmann on January 22, 2014. ECF No. 23 at 16.

Soto sued Danny Herman and Waldmann in federal court. ECF No. 23. She brought claims against Waldmann for negligence, negligence per se, gross negligence, and intoxication assault.

ECF No. 23 at 10, 20, 22. Her claims against Danny Herman were for direct negligence (that is, negligent hiring, entrustment, supervision, and training), respondeat superior, and gross negligence. ECF No. 23 at 11, 20–21. Danny Herman moves to dismiss the direct negligence claims against it, the gross negligence claims against both defendants, and the intoxication assault claim against Waldmann. ECF No. 24.

## DISCUSSION

### I. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. S.A., L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. 2014) (citing *Patrick v. Wal-Mart, Inc. Store No. 155*, 681 F.3d 614, 617 (5th Cir. 2012)); *see also Torch Liquidating Trust ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 384 (5th Cir. 2009) ("[T]he complaint must contain either direct allegations or permit properly drawn inferences to support every material point necessary to sustain a recovery.") (internal quotation marks and citations omitted). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be

construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that courts should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions").

## II. Analysis

### A. <u>The direct-negligence claims against Danny Herman are dismissed pursuant to the respondeat superior admission rule.</u>

Danny Herman argues that the direct-negligence claims against it should be dismissed pursuant to the respondeat superior admission rule. That rule provides that "a plaintiff may not advance ordinary negligence claims against an employer under both vicarious liability (respondeat superior) and direct liability (negligent hiring and negligent supervision) 'where the derivative liability of the owner has already been established by an admission or stipulation of agency or course and scope of employment.'" *Manson v. B&S Trucking of Jackson, LLC*, No. SA-21-CV-01181-XR, 2023 WL 3170494, at *4 (W.D. Tex. May 1, 2023); *Maliyamkono v. Melton Truck Lines, Inc.*, No. SA-25-CA-00793-XR, 2026 WL 1078638, at *3 (W.D. Tex. Apr. 17, 2026). But a plaintiff who successfully pleads that the employer was grossly negligent may pursue both vicarious liability and direct negligence claims against the employer. *See Ruiz v. Minh Trucking, LLC*, No. 5:19–CV–1191–DAE, 2020 WL 8361992, at *7 (W.D. Tex. Dec. 3, 2020) ("[A] different

situation is presented where 'the plaintiff has alleged ordinary negligence against the driver and gross negligence against the [employer] . . . . This creates a separate ground for recovery, and therefore the gross negligence claim and the respondeat superior claim are not mutually exclusive modes of recovery.'").

As discussed below, Soto has not alleged sufficient facts to reasonably infer that Danny Herman was grossly negligent. And because Danny Herman has admitted that Waldmann was acting within the course and scope of his employment, the direct-negligence claims against Danny Herman, including the negligent entrustment claim, must be dismissed.

B. Soto has not adequately pleaded her gross negligence claim against Waldmann.

In her complaint, Soto asserts claims of gross negligence against both Waldmann and Danny Herman. ECF No. 23 at 20–21. A prerequisite to a finding of gross negligence is a finding of ordinary negligence.[4] *Perez v. U.S. Xpress, Inc.*, No. 6:21-CV-00432-ADA, 2023 WL 3681714, at *3 (W.D. Tex. Mar. 10, 2023). Beyond that, establishing gross negligence requires proof of two elements: (1) viewed objectively from the actor's standpoint, the act or omission must involve "an extreme degree of risk, considering the probability and magnitude of the potential harm to others;" and (2) the actor must have "actual, subjective awareness of the risk involved, but nevertheless proceed[] with conscious indifference to the rights, safety, or welfare of others." TEX. CIV. PRAC. & REM. CODE § 41.001(11); *In re Oncor Elec. Delivery Co. LLC*, 716 S.W.3d 525, 532 (Tex. 2025). "Both elements of gross negligence . . . may be proven by circumstantial evidence." *Malone v. Spence*, No. 3:21-CV-2047-BH, 2023 WL 5022680, at *6 (N.D. Tex. Aug. 7, 2023). But

[4] The elements of negligence are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540-41 (5th Cir. 2005). The defendants do not dispute that Soto has adequately alleged Waldmann's ordinary negligence.

evidence of simple negligence is not enough to prove either element. *Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 655 (S.D. Tex. 2016).

As for the objective element of gross negligence, "'extreme risk' is not a remote possibility or even a high probability of minor harm, but rather the likelihood of the plaintiff's serious injury." *Lara v. Power of Grace Trucking, LLC*, No. PE:20-CV-00010-DC-DF, 2021 WL 7184245, at *3 (W.D. Tex. Oct. 4, 2021) (quoting *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012)). "[T]he act or omission complained of must significantly depart from the ordinary standard of care." *Ruiz*, 2020 WL 8361992, at *3. For example, "[a]n act or omission that is merely thoughtless, careless, or not inordinately risky cannot be grossly negligent." *Phillips*, 189 F. Supp. 3d at 654. "With respect to the subjective element of gross negligence, the plaintiff must show that the 'defendant knew about the peril, but his acts or omissions demonstrate that he did not care.'" *Ruiz*, 2020 WL 8361992, at *3 (quoting *Diamond Shamrock Ref. Co. v. Hall*, 168 S.W.3d 164, 173 (Tex. 2005)). "This does not require the defendant to anticipate the precise manner in which the injury would occur or the identity of the victim." *Id.*

Soto argues that the hit-and-run itself, Waldmann's sleep apnea diagnosis, his 524-mile day of driving one week before the accident, his involvement in a prior fatal crash, and his prior speeding violation support an inference of gross negligence. ECF No. 27 at 18–19.

Soto first argues that the hit-and-run itself supports a reasonable inference of Waldmann's conscious indifference, because "he knew he had struck something and chose to leave the scene rather than render aid." ECF No. 27 at 18. But "[d]etermining whether an act or omission involves" the kind of extreme risk necessary to support a gross negligence claim "requires 'an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight.'" *Rayner v. Dillon*, 501 S.W.3d 143, 148 (Tex.

App.—Texarkana 2016, pet. dism'd by agr.). The amended complaint likely supports an inference that Waldmann knew about the collision *after* it occurred. But his alleged post-accident conduct (driving away) suggests little about whether, leading up to the accident, he was subjectively aware of or consciously indifferent towards a risk, let alone an extreme one.

Next, Soto points to Waldmann's disclosure nineteen days before the collision that he suffers from a condition requiring use of a CPAP machine, suggesting a diagnosis of sleep apnea. ECF No. 23 at 9. Sleep apnea is "characterized by interrupted breathing during sleep" and can result in "excessive daytime drowsiness and fatigue-impaired driving." *Id.* Driving a large truck while fatigued can constitute gross negligence in some circumstances. *See Dillon*, 501 S.W.3d at 152–53 (upholding a jury verdict finding gross negligence where there was evidence that a tractor-trailer driver collided with plaintiff's vehicle while the driver was fatigued). Soto pleaded on information and belief that Waldmann was operating a commercial motor vehicle while fatigued or impaired. ECF No. 23 at 11. "While allegations may be based upon information and belief, 'the complaint must set forth a factual basis for such belief.'" *McGrath v. Brewer*, No. 24-50335, 2025 WL 2828853, at *3 (5th Cir. Oct. 6, 2025). The fact that Waldmann likely has sleep apnea is not sufficient to support an inference that he was fatigued at the time of the accident, much less plausibly allege gross negligence.

Soto also alleges that, a week before the crash, Waldmann drove 524 miles in a single day, with eight hours and twenty-four minutes of driving time. ECF No. 23 at 9. The Federal Motor Carrier Safety Administration ("FMCSA") provides that property-carrying drivers "[m]ay drive a maximum of 11 hours after 10 consecutive hours off duty." *Summary of Hours of Serv. Regulations*, Federal Motor Carrier Safety Administration (Mar. 2022), https://www.fmcsa.dot.gov/regulations/hours-service/summary-hours-service-regulations (last

visited August 27, 2026); 49 C.F.R. § 395.3(a). So the alleged driving time fell within the limits permitted by FMCSA regulations. Also, it is unclear how a single instance of extended driving a whole week before the accident occurred would have impacted Waldmann's driving on the day of the accident. Accordingly, this allegation does not support an inference that Waldmann was grossly negligent.

Waldmann's prior fatal crash also does not allow an inference of gross negligence. In 2013, the year before Danny Herman hired him, Waldmann allegedly disclosed a DOT-recordable crash involving a fatality. ECF No. 23 at 8. However, he was not cited and stated that the crash was not his fault. *Id.* Without some facts suggesting that Waldmann bore at least partial responsibility for the 2013 crash, these allegations do not support an inference of extreme risk or subjective awareness thereof. Additionally, Soto does not allege anything about the circumstances surrounding the 2013 crash. Without such allegations, it is unclear whether that crash involved sufficiently similar circumstances to support an inference that Waldmann knew his conduct preceding the collision underlying this suit posed an extreme risk to others.

Waldmann's prior speeding violation, for traveling 11 miles per hour over the speed limit, likewise does not support an inference of gross negligence. Courts have held that speeding tickets prior to employment, without significantly more, are insufficient. *See, e.g., Jezek v. R.E. Garrison Trucking, Inc.*, 637 F. Supp. 3d 445, 452 (N.D. Tex. 2022); *Olivarez v. Get Cargo, Inc.*, 2014 WL 12588337, at *3 (W.D. Tex. Sept. 25, 2014); *Phillips*, 189 F. Supp. 3d at 653.

Even taken together, these allegations do not plausibly support an inference of gross negligence. They describe isolated incidents and circumstances that—while potentially relevant to ordinary negligence—do not suggest the kind of extreme risk required for gross negligence, subjective awareness of such risk, or conscious indifference. Accordingly, Soto has failed to allege

facts that would allow the Court to draw a reasonable inference that Waldmann was grossly negligent. The gross-negligence claim against Waldmann must be dismissed.

C. Soto has not adequately pleaded her gross negligence claim against Danny Herman.

"A corporation may not be held liable for punitive damages for gross negligence unless the corporation itself (1) commit[ed] gross negligence, (2) authorized or ratified an agent's gross negligence, (3) was grossly negligent in hiring an unfit agent, or (4) committed gross negligence through the actions or inactions of a vice-principal." *Manson v. B&S Trucking of Jackson, LLC*, No. SA-21-CV-01181-XR, 2024 WL 3223693, at *3 (W.D. Tex. May 28, 2024). "Whether the corporation's acts can be attributed to the corporation itself, and thereby constitute corporate gross negligence, is determined by reasonable inferences the factfinder can draw from what the corporation did or failed to do and the facts existing at relevant times that contributed to a plaintiff's alleged damages." *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 922 (Tex. 1998).

Soto argues that several of Danny Herman's alleged acts and omissions support an inference of gross negligence: (1) a fleet-wide Unsafe Driving BASIC score above 1.0 for at least twenty-four consecutive months; (2) a lack of documented annual driving-record reviews, recurring safety training, or supervisory intervention over Waldmann's ten years working for Danny Herman; (3) documented driver texting/handheld phone violations; (4) failure to conduct post-collision drug and alcohol testing required by company policy; (5) failure to preserve dash-cam footage; and (6) failure to monitor Waldmann's CPAP compliance following his sleep apnea diagnosis. ECF No. 23 at 21–22.

In *Ruiz v. Minh Trucking, LLC*, a court in this district found that a trucking company hiring a driver without a background check and without training him, despite a DOT audit that had put the company on notice that its safety management controls were inadequate, could contribute to a

finding of gross negligence. *Ruiz*, 2020 WL 8361992, at *6. But this case is materially different from *Ruiz*. On the surface, Danny Herman's alleged failure to conduct annual driving-record reviews and to provide recurring training might seem analogous to the failure to perform a background check and failure to train in *Ruiz*.[5] And Danny Herman's high Unsafe Driving BASIC score might—like the DOT audit in *Ruiz*—have put Danny Herman on notice that it needed better safety measures. ECF No. 23 at 6, 21.[6]

But in *Ruiz*, the company's failures were causally connected to the collision. Merely one month after being hired, the driver rear-ended the plaintiff's vehicle with a commercial truck. *Ruiz*, 2020 WL 8361992, at *1. Had the company performed a background check, it would have discovered that the driver's commercial driver's license had previously been suspended and that he had previously been disqualified from operating a commercial vehicle for several years. *Id.* at *1, *4. It would be reasonable to infer that, if the company had conducted a background check, it might have avoided placing someone with that history on the road, especially without training; indeed, placing him on the road with knowledge of his history might, itself, have supported a gross negligence finding.

Here, by contrast, there are no allegations supporting an inference that Danny Herman's failure to conduct annual driving-record reviews or provide recurring training caused the collision. For example, there are no allegations suggesting that Waldmann had the kind of driving history

[5] That said, there is a clear distinction between the company in *Ruiz*'s failure to conduct *any* background check or training and Danny Herman's alleged failure to conduct *recurring* reviews and training.

[6] The significance of Danny Herman's Unsafe Driving BASIC score is unclear. The Fixing America's Surface Transportation ("FAST") Act requires that an online "data analysis of motorcoach operators" include the following notation: "Readers should not draw conclusions about a carrier's overall safety condition simply based on the data displayed in this system. Unless a motor carrier has received an UNSATISFACTORY safety rating under part 385 of title 49, Code of Federal Regulations, or has otherwise been ordered to discontinue operations by the Federal Motor Carrier Safety Administration, it is authorized to operate on the Nation's roadways." Fixing America's Surface Transportation Act, Pub. L. No. 114-94, § 5223, 129 Stat. 1538, 1542 (2015). Although this directive is contained in a statutory note, "statutory notes are binding law." *Ruiz-Perez v. Garland*, 49 F.4th 972, 974 n.1 (5th Cir. 2022).

that would have led a reasonable company to keep him off the road or would have suggested that he needed further training. Without a causal connection, these alleged omissions do not support a finding of gross negligence. *See Rayner v. Claxton*, 659 S.W.3d 223, 258 (Tex. App.—El Paso 2022, no pet.) ("Because there is insufficient evidence to link [the company's] independent actions to causing the incident, we likewise find the evidence is insufficient to support finding the same allegations constitute grossly negligent conduct.").

Even apart from the lack of a causal connection, Danny Herman's alleged failures do not support an inference of gross negligence. In 2014, when Waldmann was hired, Danny Herman reviewed his driving record. Danny Herman has not produced any subsequent record reviews for Waldmann, even though he worked at the company for ten years. ECF No. 23 at 16. Under 49 C.F.R. Section 391.25, motor carriers must review the motor vehicle record of each driver they employ at least once every 12 months. 49 C.F.R. § 391.25 (2022). But a violation of federal regulation does not per se establish gross negligence. *Baird v. Shagdarsuren*, No. 3:17-CV-2000-B, 2020 WL 208815, at *4 (N.D. Tex. Jan. 14, 2020).

While "[a] general failure to create a 'culture of safety' through a lack of ongoing training may in some circumstances" rise to the level of negligence, it is not enough to show gross negligence. *Alpizar v. John Christner Trucking, LLC*, No. SA-17-CV-00712-FB, 2019 WL 1643743, at *7 (W.D. Tex. Apr. 16, 2019), *report and recommendation adopted*, No. CV SA-17-CA-712-FB, 2019 WL 4087445 (W.D. Tex. May 17, 2019). And "Texas courts have consistently upheld the legal principle that an employer has no duty to warn, instruct, or train an employee already experienced with respect to the work assigned, even in the context of tractor-trailer drivers." *Trevino v. Transportadora Egoba SA DE CV*, No. 5:22-CV-92, 2024 WL 4987040, at *5

(S.D. Tex. Sept. 30, 2024). Waldmann had experience driving tractor-trailers for other companies prior to his employment with Danny Herman. ECF No. 23 at 7–8.

Further, Soto did not allege any facts showing that Waldmann's conduct warranted supervisory intervention. She did not point to any violations, complaints, or incidents during his ten years of employment that would have put Danny Herman on notice that additional oversight was necessary. Thus, the alleged lack of supervisory intervention is too attenuated from the collision to support a finding of gross negligence. *Compare Dalworth Trucking Co. v. Bulen*, 924 S.W.2d 728, 732 (Tex. App.—Texarkana 1996, no writ) (finding a company grossly negligent where it failed to discipline or admonish a driver despite knowledge that he committed fifty-five violations of company speed policies, six hours-of-service violations, and one missing log violation).

Danny Herman's fleet data shows that in the twenty-four months preceding the accident, its drivers incurred two violations for hand-held mobile telephone use and one violation for texting while driving. ECF No. 23 at 18. Cell phone usage at the time of a motor vehicle accident can create an extreme degree of risk that supports an inference of gross negligence. *See Alpizar*, 2019 WL 1643743, at *5. But Soto does not provide any allegations beyond speculation that Waldmann was using a cell phone at the time of the accident. The prior cell-phone-related violations incurred by other drivers do not support an inference of gross negligence.

Soto next alleges that, following the accident, Danny Herman failed to conduct post-collision drug and alcohol testing required by company policy. ECF No. 23 at 21. But internal policies or procedures alone "do not determine the governing standard of care" for a negligence action, and the failure to follow such policies does not establish negligence. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004). Allowing internal policies to define the

legal standard of care could penalize companies for adopting higher internal standards than the law requires. *Id.* at 92–93. That concern is evident here, because 49 C.F.R. Section 382.303 only requires post-accident testing if: (1) the accident involved a fatality or (2) the driver received a citation and the accident involved either (a) "[b]odily injury to any person who, as a result of the injury, immediately receive[d] medical treatment away from the scene of the accident" or (b) disabling damage to at least one motor vehicle. 49 C.F.R. § 382.303 (2022). Further, "post-accident conduct is" at least generally "irrelevant to gross negligence claims." *De Leon v. Trahan*, No. P:21-CV-00086-DC, 2024 WL 2243302, at *4 (W.D. Tex. Apr. 1, 2024).

Soto also argues that the defendants' failure to preserve dashcam footage supports her gross negligence claims. ECF No. 23 at 21; ECF No. 27 at 21. A party's destruction of adverse video footage can support an inference that the party knew the footage would reveal dangerous conduct. *See Brookshire Bros. v. Aldridge*, 438 S.W.3d 9, 22 (Tex. 2014) ("We recognize that a party's intentional destruction of evidence may, '[a]bsent evidence to the contrary,' be sufficient by itself to support a finding that the spoliated evidence is both relevant and harmful to the spoliating party."). But the destruction must be intentional, not merely negligent, for that inference to apply. *See id.* ("Negligent spoliation could not be enough to support such a finding without 'some proof about what the destroyed evidence would show.'"). Soto identified various ways the dash cam footage might have been lost—system failure, data overwrite, or inadequate retention policies. ECF No. 23 at 9. But she does not plausibly allege intentional spoliation, so the Court cannot infer that the footage would have contained evidence harmful to Danny Herman.

Soto also has not pleaded facts sufficient to infer that Danny Herman's allegedly failing to monitor Waldmann's CPAP compliance is causally connected to the accident, because Soto did not adequately plead that Waldmann was fatigued at the time of the collision. Accordingly, this

failure to monitor cannot support an inference that Danny Herman acted with conscious indifference to the risk that produced the collision. *Compare Dillon*, 501 S.W.3d at 150 (finding a company grossly negligent where its driver's fatigue caused the accident, and the company had not only permitted, but also implicitly encouraged, the driver to operate the truck in such a condition).

Soto also argues that a vice-principal of Danny Herman was grossly negligent. ECF No. 27 at 19. She says that Director of Safety Clint Robinson is plausibly a vice-principal, and that his department is responsible for the obligations that were allegedly systematically neglected over a ten-year period (annual driving-record reviews, recurring driver safety training, CPAP compliance monitoring, and supervisory response to FMCSA Safety Measurement System data). *Id.* She states that this neglect is "vice-principal-level conduct on which corporate gross negligence may be predicated." ECF No. 27 at 20. Even assuming Robinson qualifies as a vice principal, that does not change that, as described above, the alleged failures do not plausibly amount to gross negligence with respect to this accident.

Ultimately, Soto's allegations do not permit a reasonable inference that Danny Herman was grossly negligent.

D. <u>The intoxication assault allegation is not viable.</u>

Soto alleges that Section 41.008(c)(14) of the Texas Civil Practice and Remedies Code applies. ECF No. 23 at 22. Section 41.008(c)(14) is not an independent cause of action. *See* TEX. CIV. PRAC. & REM. CODE § 41.008(c)(14). It is an exception to Texas's statutory limit on exemplary damages. *See id.* The exception applies when a defendant's grossly negligent conduct also constitutes "intoxication assault" under Texas Penal Code Section 49.07. *See id.* Because Soto has not adequately alleged gross negligence, this exception is inapplicable.

### III. Leave to amend

Soto requests leave to file an amended complaint if the Court finds any portion of the first amended complaint deficient. ECF No. 27 at 26. She says that she "pleaded specific, sourced facts in her first amendment and would readily plead more if the Court identifies any deficiency." *Id.* Leave to amend should be freely given absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment." *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003). There is no indication that any circumstances warranting denial of leave to amend are present here. Soto's request for leave to amend the complaint is thus granted. **She will have 14 days to file an amended complaint, if she chooses to do so.**

## CONCLUSION

For the foregoing reasons, the Motion to Dismiss (ECF No. 24) is **GRANTED.** Judy Soto's gross negligence and intoxication assault claims are **DISMISSED WITHOUT PREJUDICE**. Her direct negligence claims against Danny Herman Trucking, Inc. are also **DISMISSED WITHOUT PREJUDICE**. Her negligence and negligence per se claims against Shawn Timothy Waldmann and her vicarious liability claim against Danny Herman Trucking, Inc. remain pending.

It is so **ORDERED**.

**SIGNED** this 31st day of August, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE